IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RICHARD MOORE                                                                      PLAINTIFF

v.                                                                      CAUSE NO. 1:16CV148-LG

VALRIE PETERS, United States Probation Officer,
and DEPUTY PATTERSON                                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS, DISMISSING ALL CLAIMS AGAINST DEFENDANT PETERS, AND ORDERING PLAINTIFF TO SHOW CAUSE WHY HIS CLAIMS AGAINST DEFENDANT PATTERSON SHOULD NOT BE DISMISSED

Before the Court is the [31] Motion to Dismiss filed by Defendant Valrie Peters, a government official sued in her individual capacity. Having considered the pleadings, Plaintiff Richard Moore's testimony at the screening hearing held in this matter, the Motion, and the relevant law, the Court is of the opinion that the Motion should be granted and all claims against Peters should be dismissed. The Court will also order Plaintiff Moore to show cause why his remaining claims should not also be dismissed.

BACKGROUND

Moore, while a federal prisoner, filed a "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983" against multiple defendants and later amended the Complaint to add more defendants. Moore was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

After a screening hearing, the Court dismissed all Defendants but Peters, who was Moore's federal probation officer, and Defendant Deputy Patterson, who

Moore alleges is a deputy with the Pontotoc County Sheriff's Office.[1] Moore states that he "was released to the custody of the United States Probation Department in August 2013 to serve 3 years of supervised release." (Compl. 1, ECF No. 1). He further states that Defendant Peters told him

> that it was unlikely he would succeed on supervised release. Ms. Peters stated that due to the fact that the Plaintiff not admitting [*sic*] to the crime to which he was accused and taking [the case] to trial, that the judge . . . and U.S. Probation office had rather Plaintiff spend the rest of his life in prison.

(*See id.* at 1-2).

Moore claims that "[o]ver the course of 2 ½ years, . . . Peters made several sexual advances toward" Moore, made sexual comments, and asked him sexually personal questions. (*See id.* at 2-3). He contends that "[o]n 3 different occasions," Peters demanded that he take a "urine test where she entered a restroom alone with" Moore and watched Moore's "exposed penis and made profane conversation and statements." (*See id.* at 2). He also alleges that Peters told him that if he reported "the sexual advances, she would have [the judge] violate his probation and would make sure plaintiff went to a prison where his life would be a living hell." (*See id.* at 2-3). The Complaint contains other allegations about comments Peters allegedly made to Moore or things she allegedly told him. (*See id.* at 3-4).

Additionally, Moore states that Peters worked with Moore's roommate, Tanner Vaughan, "to attempt to 'set-up' [Moore] in order to violate his probation.

---

[1] Moore represented to the Court that he does not know Patterson's first name.

(*See id.*).  He states that Peters then "coordinated a full blown 'RAID' with over two dozen law enforcement officers at Plaintiff's residence." (*See id.* at 4). Moore alleges that "Peters located 3 'sex toys' shaped like a penis in Vaughan's bedroom [and she] cut open each 'toy' and sadistically laid them out . . . in open view to send a 'message' to" Moore.  (*See id.* at 4-5).

Moore claims that Vaughan told Peters that Moore was going to file "an official complaint on Peters outlining the sexual harassment[,]" and that thereafter U.S. Marshals came to his home "and arrested him for a so-called probation violation" based on false accusations by Peters.  (*See id.* at 5-6).  At the screening hearing, Moore elaborated that he believed Peters was retaliating against him for not having sex with her by making "ridiculous claims of a probation violation in order to control and, ultimately, shut me down." (*See* Hearing Tr. 13:11-20).

Moore was found guilty of multiple probation violations, but contends that Peters "made up stories and made sure [he] lost his home, auto, and all vested interest in a large real estate purchase and causing the property to go in to default. Peters conducted several interviews with community members ranting about who he was having sex with and what he had 'against her.'" (*See* Compl. 6, ECF No. 1).

At the screening hearing, Moore again stated that Peters made "bogus assertions" at the probation revocation hearing "and the Court went along with that." (*See* Hearing Tr. 13:21-14:2). He testified: "Which, nothing could be further from the truth.  It had everything to do with what the underlying deal was, which was she was divorced.  And she spent a great deal of time – it became some type of

3

obsessed fatal attraction." (*Id.* at 14:3-6); (*see also id.* at 13:16-17). Moore alleges that he has suffered permanent damages "by being harassed sexually, mental torture of 2 ½ years of being told that no one will believe a 'pervert' over a federal office. Plaintiff was and is being treated like an animal and thrown in prison because he refused to have sex with . . . Peters on several occasions." (*See* Compl. 6-7, ECF No. 1).

With respect to Defendant Patterson, Moore states that Patterson colluded with Peters "in order to set a false and manufactured 'trap' to violate [Moore]'s supervised release." (Mot. To Amend 1, ECF No. 6). Moore claims that he was sent to "federal prison on false claims made by" Peters and Patterson. (*See id.* at 3).

Peters has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court advised Plaintiff Moore at the screening hearing that if he continued to represent himself, he would be expected to respond to motions. However, instead of filing a substantive response to the Motion, Moore filed a two-page "Answer" to the Court's July 17, 2017 [33] Order to Show Cause, stating in pertinent part that he "affirms his original Complaint of sexual assault[,] civil rights violations and collusion" against Peters. (*See* Answer 1-2, ECF No. 35).

## DISCUSSION

In ruling on a 12(b)(6) motion, the Court accepts "as true the well-pleaded factual allegations in the complaint and construe[s] the complaint in the light most favorable to the plaintiff." *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 557 (5th Cir. 2002). "[A] complaint must contain sufficient factual matter,

4

accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court may dismiss "[a] complaint, as amended by a [screening] hearing . . . pursuant to a Rule 12(b)(6) motion by the defendant . . . if it lacks an arguable basis in law." *See Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995).

The Court has construed Moore's claims against Peters as being made pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Order 2, ECF No. 25). A *Bivens* action permits a person deprived of federal constitutional rights by a federal actor to maintain an action for monetary damages against that actor in an individual capacity. *See, e.g.*, *Iqbal*, 556 U.S. at 675-76. Moore's claims against Patterson, a state actor, are properly analyzed under Section 1983. Peters has now moved to dismiss Moore's Complaint on several grounds, including that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the claims against her, that she enjoys quasi-judicial immunity, and that she otherwise has qualified immunity. The Court discusses each ground in turn below.

A. *HECK V. HUMPHREY*

Peters contends that *Heck* precludes Moore's claims. In *Heck*, the United States Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must

prove that the conviction or sentence has been reversed on direct appeal" or otherwise determined to be invalid.[2] 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence [or probation revocation] that has *not* been so invalidated is not cognizable under § 1983." *See id.* at 486 (emphasis in original); *see also Jackson,* 49 F.3d at 177 (applying *Heck* to a probation revocation). Thus, when a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his [probation revocation]; if it would the complaint must be dismissed . . . ." *See Heck*, 512 U.S. at 486.

There is no allegation that a court has reversed Moore's probation revocation on direct appeal or otherwise declared the revocation invalid; rather, the Fifth Circuit has affirmed the district court's judgment. *See United States v. Moore*, No. 16-60316, 2017 WL 1437274, at *1 (5th Cir. Apr. 24, 2017). To the extent Moore's claim is that Peters retaliated against him for not responding to her sexual advances by conspiring and/or colluding with others to arrest him for parole violations that he did not commit and by falsely testifying at his probation revocation hearing, such claims are *Heck*-barred because a judgment in Moore's favor on those claims would necessarily imply the invalidity of the probation revocation. *See, e.g.*, *Jackson,* 49 F.3d at 177; *Cougle v. Cty. of DeSoto*, 303 F. App'x 164, 165-66 (5th Cir. 2008); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996)

---

[2] *Heck* applies equally to *Bivens* actions. *See Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994).

(*Heck* barred a plaintiff's claim that a "probation officer and others conspired to have . . . search and arrest warrants issued and that the probation officer falsely testified at his probation revocation hearing" because such claim "necessarily implie[d] the invalidity of his parole revocation" and "amount[ed] to a collateral attack on his parole revocation and subsequent incarceration"); *Walde v. Guertler*, No. CIVA306CV00466, 2006 WL 5444361, at *1 (E.D. Va. July 19, 2006), *aff'd*, 210 F. App'x 315, *1 (4th Cir. 2006); *Williams v. Hill*, 74 F.3d 1339, 1341 (D.C. Cir. 1996).

All of Moore's claims against Defendant Patterson stem from Moore's allegation that Patterson colluded with Peters to falsify charges against Moore so that Moore's probation would be revoked. Accordingly, the Court is of the opinion that Moore's claims against Patterson are also *Heck*-barred under the law set forth above. *See, e.g.*, *Jackson,* 49 F.3d at 177. The Court will order Moore to show cause in writing why the claims against Patterson should not also be dismissed.

*Heck* does not bar Moore's claims related to Peters' alleged sexual advances and comments, as a judgment in favor on those claims would not necessarily imply the invalidity of Moore's probation revocation. *See, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 534 (2011). As a result, the Court must determine whether these claims are barred by quasi-judicial or qualified immunity.

B. **QUASI-JUDICIAL IMMUNITY**

Peters argues that she is entitled to quasi-judicial immunity because all of Moore's claims against her "took place while in her capacity as a Supervisory

7

United States Probation Officer and during Mr. Moore's supervised release. Here, the functions at issue are critical to the judicial process, *e.g.*, the execution of the court's orders of supervised release . . . . " (Peters Mem. 5, ECF No. 32). Judges "are absolutely immune from liability for judicial acts that are not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive." *See Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989). "Officials whose responsibilities are 'functionally comparable' to those of a judge are also absolutely immune from liability.'" *Id.* (citation omitted). "These officials are sometimes labeled 'quasi-judicial' officials and . . . need not be members of the judiciary." *See id.* at 996. "Prosecutors and other necessary participants in the judicial process enjoy 'quasi-judicial' immunity as well." *Id.*

"The 'cluster' of absolute immunities that protect participants in judicial . . . proceedings exist to help guarantee an independent, disinterested decision-making process." *Id.* "These absolute immunities prevent the harassment and intimidation that could otherwise result if disgruntled litigants–particularly criminal defendants [who] have their liberty at stake–could vent their anger by suing either the person who presented the decision maker with adverse information or the person or persons who rendered an adverse decision." *See id.* at 996-97.

Peters is immune for her alleged actions in falsely providing information, including testimony, that Moore claims resulted in his probation revocation. *See generally Briscoe v. LaHue*, 460 U.S. 325 (1983); *see also, e.g., Galarza-Morales v. Means*, No. 4:16-CV-140-O, 2016 WL 9049520, at *2-3 (N.D. Tex. Apr. 7, 2016)

8

("Plaintiff seeks to hold [two] Probation Officers . . . liable based upon their involvement in the revocation of his supervised release. Such involvement on the part of probation officers is quasi-judicial in nature and, as such, is protected by absolute immunity. . . . Plaintiff cannot recover from these Defendants.") (citing *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 975-76 (5th Cir. 1988)). The Court is of the opinion that Patterson is also immune with respect to any similar claims against him, and, thus, Moore should address this issue in his show cause response.

Nevertheless, the Court is unpersuaded that judicial immunity for probation officers is as extensive as Peters argues, and finds that dismissal at this juncture is unwarranted on this ground, except with respect to Moore's claims that Peters falsely gave information that resulted in his probation revocation.[3] Therefore, the Court will turn to whether Peters has qualified immunity with respect to Moore's remaining allegations related to sexual advances and comments.

## C. QUALIFIED IMMUNITY

Peters states that even if she does not have quasi-judicial immunity, she still has qualified immunity from Moore's claims. When a government official defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate that the defense does not apply, but "all inferences are drawn in his favor." *See Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015) (citation, quotation marks, and brackets omitted); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

---

[3] Such claims are also *Heck*-barred, as discussed above.

In evaluating qualified immunity, the Court considers (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). "If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity." *Hampton v. Oktibbeha Cty. Sheriff' Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).

Claims by federal prisoners of sexual harassment by federal prison guards are generally analyzed under the Eighth Amendment and its protections against cruel and unusual punishment. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998); *see also, e.g.*, *Lewis v. Hudson*, No. 4:14-CV-359-A, 2014 WL 3420815, at *2 (N.D. Tex. July 14, 2014). Moore was on probation and not incarcerated at the time he states that Peters harassed him. The Court has not located a Fifth Circuit case addressing whether the Eighth Amendment applies to a probationer's claims such as Moore's, "[b]ut even if [that] Amendment does not apply, the protections afforded probationers would at least be as great as those afforded prisoners under the Eighth Amendment." *See Hoffman v. Stulga*, No. SA-09-CA-0618-XR, 2011 WL 13202936, at *4 (W.D. Tex. Jan. 10, 2011). In any event, assuming Moore's claims are cognizable under the Eighth Amendment, they fail to state a claim.

Although Moore couches his allegations in terms of "sexual assault," he has

never claimed in either his Complaint or at the screening hearing that Peters ever physically touched him.  Instead, he claims that Peters engaged in conduct such as making sexual comments, inquiring about his sex life, and making sexual propositions/advances while he was on supervised release, including in the context of three urine tests.[4]

However, "[v]erbal sexual harassment does not violate [Moore]'s constitutional rights . . . ." *See Jane Doe 5 v. City of Halton City*, 106 F. App'x 906, 908 (5th Cir. 2004); *see also, e.g.*, *Leflore v. Carroll-Montgomery RCF*, No. 4:13CV147-GHD-SSA, 2014 WL 1276494, at *3 (N.D. Miss. Mar. 27, 2014); *Smith v. Rivera*, No. 1:14-CV-148, 2015 WL 7455529, at *1 (E.D. Tex. Nov. 23, 2015); *Lewis*, 2014 WL 3420815, at *2.  The alleged urine test incidents do not change this result, either.  *See, e.g.*, *Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 329-31 (D. Conn. 2013); *see also Davis v. Chairman, Tex. Bd. of Criminal Justice*, No. 6:10CV646, 2011 WL 2600900, at *2 (E.D. Tex. May 27, 2011), *rep. and rec. adopted*, 2011 WL 2669327, at *2-3 (E.D. Tex. July 6, 2011).  Because Moore has not stated a constitutional claim against Peters, the Court is of the opinion that Peters is entitled to qualified immunity on the remaining claims against her.

## CONCLUSION

To the extent the Court has not addressed any of the arguments made with

---

[4] It is unclear to the Court if Moore is alleging a single urine test incident, or three separate incidents.  For purposes of this Motion, the Court will assume that there were three incidents.

respect to the pending Motion, it has considered them and determined that they would not alter this result. For the reasons discussed herein, the Court is of the opinion that Peters should be dismissed as a defendant in this action and that Moore must show cause why his claims against Patterson should not also be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [31] Motion to Dismiss filed by Defendant Valrie Peters is **GRANTED**. The Clerk is directed to terminate Peters as a defendant in this action.

**IT IS FURTHER ORDERED** that Plaintiff Richard Moore must **SHOW CAUSE IN WRITING by September 29, 2017** why his remaining claims not also be dismissed, as discussed herein. **Failure to file a timely response could result in dismissal of the remaining claims without further notice.** In lieu of filing a show cause response, Moore may elect to voluntarily dismiss this action.

The Clerk is **ORDERED** to mail a copy of this Order, along with an Acknowledgment, to Plaintiff Moore at his address of record.

**SO ORDERED AND ADJUDGED** this the 30th day of August, 2017.

s\ *Louis Guirola, Jr.*
Louis Guirola, Jr.
Chief U.S. District Judge